# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| **RANDY BROWN,** |
| **Plaintiff,** |
| v. |
| **WHOLE FOODS MARKET GROUP, INC.,** |
| **Defendant.** |

Civil Action No. 13-175 (JEB)

## MEMORANDUM OPINION

*Pro se* Plaintiff Randy Brown is a black man who allegedly suffers from a cognitive disability that can sometimes disorient him. His unpleasant interactions with the staff of his local supermarket precipitated this suit against Whole Foods Market Group, Inc., for discrimination on the basis of disability status and race in violation of the Americans with Disabilities Act and the Civil Rights Act of 1964. Whole Foods has now filed a Motion to Dismiss Brown's Complaint, contending that his claims are infirm under both laws. Agreeing, the Court will grant the Motion.

**I.     Background**

According to Brown, whose allegations the Court must accept as true at this stage, Whole Foods employees repeatedly harassed him on account of his race and disability status as he attempted to shop at the grocery chain's Foggy Bottom location. See Compl. at 1-2; Am. Compl. at 1-3. Brown's disability is a cognitive one that can cause him to become disoriented and distracted on occasion. See Compl. at 1.

1

In his pleadings, Brown alleges several instances of abuse that he suffered at the hands of Whole Foods staff. In the first incident, on an unspecified date, a cashier asked him, "Wouldn't your food stamps buy more at a less expensive store?" Am. Compl. at 1. Brown explained that he did not receive food stamps, but the cashier, in a voice loud enough to be heard by other shoppers, insisted that he had seen Brown use food stamps at the store before and ridiculed him for doing so. Id. Brown complained to the store's management, and the cashier was reassigned to stocking shelves, thereafter displaying "open resentment and hostility" whenever he encountered Brown in the aisles. Id. at 2. Several other employees subsequently made similar disparaging remarks to Brown. See id.

Another time, in late January 2012, a Whole Foods employee allegedly refused to serve Brown a sample of deli meat because, he told Brown, he did not believe that he actually intended to buy the product. See Compl. at 1. The employee eventually offered Brown the meat, but he used his bare fingers to pass the morsel to him, dispensing with the gloves and napkins typically used for other customers. See id. When Brown declined to accept the food in such a manner, the employee shared the story with another staff member while both pointed at Brown and laughed. See id. at 2. A few days later, that second staff member followed Brown as he browsed the store, at one point falsely accusing him of stealing olives. See id.

Brown claims that he once again complained to store management about this treatment, notifying them of his disability, "explain[ing] that the harassment was causing confusion," and "ask[ing] that management be aware that [he] was susceptible to confusion in complicated situations." Id. He also requested "an accommodation that would allow [him] to receive help from a manager in order to prevent future problems." Id.

2

In the last alleged incident, on February 4, 2012, Brown returned to the Foggy Bottom Whole Foods and noticed that a store employee was following and taking pictures of him. See Am. Compl. at 3. When Brown asked the employee why he was photographing him, the employee accused Brown of being a thief, told him that he had called the police, and advised him to leave the Whole Foods and never return. See Compl. at 2. At this, Brown experienced a panic attack that rendered him incapable of responding. See id. When the police arrived, they arrested Brown for trespassing and theft, though both charges were ultimately dropped. See id. at 3.

Brown's allegations against Whole Foods are divided between two separate Complaints filed several months apart. The first, filed on February 8, 2013, alleges claims solely under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* See id. at 1-3. The second, an "Amended" Complaint, filed on June 17, focuses exclusively on the Civil Rights Act of 1964, 42 U.S.C. § 2000a *et seq.* See Am. Compl. at 1-7. In the interim, Whole Foods filed a Motion to Dismiss on April 16 that addressed Brown's ADA claims. See MTD Compl. Upon Brown's filing of his Amended Complaint, the Court denied Whole Foods's Motion without prejudice so that it could file a new motion to dismiss that would respond to Brown's new allegations. See Minute Order, June 20, 2013. Whole Foods, justifiably confused as to whether Brown's Amended Complaint was intended to supersede or supplement his original filing, inferred the former and thus addressed its second Motion to Dismiss solely to Brown's Civil Rights Act claims. See MTD Am. Compl.

Because complaints filed by *pro se* litigants are "h[e]ld to less stringent standards than formal pleadings drafted by lawyers," Haines v. Kerner, 404 U.S. 519, 520 (1972), the Court will treat Brown's Amended Complaint as supplemental to his first, thereby preserving his initial

3

allegations under the ADA in addition to his new Civil Rights Act claims. In fairness to Whole Foods, however, the Court will also consider the challenges to Brown's ADA claims contained in Whole Foods's April 16 Motion to Dismiss. The Court notes that Brown previously filed a Response in Opposition to that Motion, see ECF No. 11 (June 17, 2013), as well as a very recent pleading in the nature of a surreply, see ECF No. 20 (Aug. 28, 2013, Supplemental Memorandum), both of which the Court will consider.

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a claim for relief when the complaint "fail[s] to state a claim upon which relief can be granted." In evaluating a motion to dismiss under Rule 12(b)(6), the Court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation and internal quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). This standard also governs the Court's consideration of Rule 12(b)(1) motions to dismiss for lack of subject-matter jurisdiction. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader"); Walker v. Jones, 733 F.2d 923, 926-26 (D.C. Cir. 1984) (same).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain

sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (internal quotation omitted). A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," but the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555-56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Finally, although *pro se* complaints receive some leeway as compared to those composed by trained attorneys, see Erickson v. Pardus, 551 U.S. 89, 94 (2007), they must still "plead factual matter that permits the court to infer more than the mere possibility of misconduct," Atherton v. District of Columbia Office of the Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) (internal quotation marks omitted).

### III. Analysis

As the Court will address the allegations in both the Complaint and the Amended Complaint, it will consider the ADA and Civil Rights Act claims separately.

#### A. Americans with Disabilities Act

The ADA states, in relevant part, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To state a claim under this provision of the Act, a plaintiff must allege (1) that he is disabled within the meaning of the ADA; (2) that the defendant owns, leases, or operates a place of public accommodation; and (3) that the defendant discriminated against him by denying him a full and equal opportunity to enjoy the services the defendant provides. See Camarillo v. Carrols Corp., 518 F.3d 153, 156 (2d Cir. 2008); Molski v. M.J. Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007).

5

Although the ADA protects against numerous kinds of disability discrimination, Brown's Complaint does not specify the form that his discrimination took. As he does emphasize that he requested from Whole Foods management "an accommodation that would allow [him] to receive help from a manager in order to prevent future problems," Compl. at 2, the Court will presume that Brown intends to allege discrimination consisting of "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii).

Even assuming that Brown is disabled and that Whole Foods is a public accommodation within the meaning of the ADA, see id. at § 12181(7)(E) (defining "public accommodation" to include "grocery store[s]"), his Complaint still fails to state a cause of action for which relief can be granted. Brown's only requested accommodation was that he "receive help from a manager in order to prevent future problems." Compl. at 2. But Brown never claims that he ever sought to make good on this request or that Whole Foods ever denied it. Cf. Camarillo, 518 F.3d at 156 (blind plaintiff stated claim under ADA by alleging that restaurant employees refused to read menu to her); Demar v. Chicago White Sox, 2006 WL 200640, at *4 (N.D. Ill. Jan 18, 2006) (plaintiff with difficulty walking stated claim under ADA by alleging that stadium would not permit him to wait to vacate stands until crowds had subsided). Although Brown's interactions with Whole Foods staff appear unpleasant, "[u]nfortunately, legislation such as the ADA cannot regulate individuals' conduct so as to ensure that they will never be rude or insensitive to persons with disabilities." Stan v. Wal-Mart Stores, Inc., 111 F. Supp. 2d 119, 126-27 (N.D.N.Y. 2000).

6

Because Brown never alleges that Whole Foods "fail[ed] to make reasonable modifications in [its] policies, practices, or procedures" in order to accommodate his disability, 42 U.S.C. § 12182(b)(2)(A)(ii) (emphasis added), he has not alleged a violation of the ADA. This Count will therefore be dismissed without prejudice.

    B. <u>Civil Rights Act of 1964</u>

Brown's Complaint also alleges that Whole Foods violated Title III of the Civil Rights Act of 1964, but because that section of the statute deals only with state-owned or state-operated public facilities, <u>see</u> 42 U.S.C. § 2000b *et seq.*, the Court will presume that Brown intended to allege a violation of Title II of the Act. Title II provides: "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin." 42 U.S.C. § 2000a(a). Brown claims that Whole Foods employees discriminated against him by stereotyping him, falsely accusing him of committing crimes, and treating him worse than the non-black customers. <u>See</u> Am. Compl. at 3-4.

Whole Foods first suggests that it is exempt from this section of the Civil Rights Act because it is not a "place of public accommodation" within the meaning of the statute. <u>See</u> MTD Am. Compl. at 5. The Act defines a "public accommodation" as an establishment that provides lodging, food for consumption on the premises, or exhibition and entertainment. <u>See</u> 42 U.S.C. § 2000a(b)(1)-(3). The term is also defined to include a facility that contains a covered establishment within its physical premises, <u>see</u> <u>id.</u> at § 2000a(b)(4)(A)(ii), so that, for example, a sports club that otherwise falls outside the Act will be transformed into a covered establishment

if it contains a snack bar. See Daniel v. Paul, 395 U.S. 298, 305 (1969). According to Whole Foods, a retail grocery store such as itself is not covered by any of these descriptions.

Brown alleges, however, that the Whole Foods store in Foggy Bottom "operat[es] a fully functioning restaurant on its premises." Aug. 12 Opp. at 4. At this stage of the proceedings, that is all Brown needs to do in order to prevail on this point. Clearly, a restaurant is a covered establishment under Title II; so if Brown is right, then a Whole Foods location containing a restaurant would also be covered. Whole Foods objects that Brown provides no factual basis for his claim, but in deciding a motion to dismiss, the Court must accept "the complaint's factual allegations as true." Sparrow, 216 F.3d at 1113. For present purposes, the Court must presume that the Foggy Bottom Whole Foods contains a restaurant and conclude that the facility is thus covered by the Act.

Moving on, Whole Foods next contends that even if it is covered by the Act, Brown cannot prevail on his claim because he has not complied with the statute's notice provision. See MTD Am. Compl. at 6. The notice provision in Title II is a "mandatory jurisdictional prerequisite," Hollis v. Rosa Mexicano DC, LLC, 582 F. Supp. 2d 22, 24 (D.D.C. 2008), that applies to plaintiffs in states or political subdivisions that have their own anti-race-discrimination laws "establishing or authorizing a State or local authority to grant or seek relief [in such cases] … or to institute criminal proceedings with respect thereto." 42 U.S.C. § 2000a-3(c). When the notice requirement applies, a plaintiff may not bring a civil action under Title II "before the expiration of thirty days after written notice of such alleged act or practice has been given to the appropriate State or local authority by registered mail or in person." Id.

The District of Columbia's Human Rights Act, see D.C. Code § 2-1401 et seq., forbids race discrimination at places of public accommodation, id. at § 2-1402.31, including retail

8

grocery stores such as Whole Foods, id. at § 2-1401.02(24), and empowers the D.C. Office of Human Rights (DCOHR) to seek relief against such discrimination. See id. at § 2-1403.01 – 1403.17. "[A] plaintiff bringing a civil action for a Title II claim of discrimination in the District of Columbia must [therefore] first file written notice with the DCOHR at least thirty days before bringing any action in federal court." Hollis, 582 F. Supp. 2d at 25.

Brown does not deny that he has so far failed to file any notice with DCOHR. He instead argues that other provisions of the Act mitigate the notice requirement, pointing out that the Act confers federal jurisdiction over civil rights claims "without regard to whether the aggrieved party shall have exhausted any administrative or other remedies that may be provided by law." See Aug. 12 Opp. at 5 (citing 42 U.S.C. § 2000a-6(a)). But Brown confuses the "notice" described in § 2000a-3(c) with the "administrative or other remedies" discussed in § 2000a-6(a). As the Tenth Circuit has explained:

> [A]ny outlawing of the doctrine of exhaustion of remedies does not negate the earlier requirement of the statute that … the state must be given the opportunity to invoke its remedies. In short, § 2000a-3(c) requires that no action shall be brought under that particular section of the act before the expiration of thirty days after notice of such alleged discriminatory act has been given the appropriate state agency; whereas, § 2000a-6(a) simply provides that one who, for example, has given notice to the appropriate state agency need not thereafter exhaust such remedy before the district court acquires jurisdiction.

Harris v. Ericson, 457 F.2d 765, 767 (10th Cir. 1972). The import of § 2000a-6(a) is clear: because Brown has not yet given notice to the DCOHR about the events at the Foggy Bottom grocery, the Court has no jurisdiction to entertain his claim against Whole Foods under Title II of the Civil Rights Act.

At this point, moreover, it is too late for Brown to cure the deficiency in his claim by filing such a notice. Complaints must be filed with DCOHR "within 1 year of the occurrence of

9

the unlawful discriminatory practice, or the discovery thereof," D.C. Code § 2-1403.04(a); see also Jones v. Howard University, 574 A.2d 1342, 1345 (D.C. 1990), and Brown alleges that the last incident of discrimination occurred on February 4, 2012, well over one year ago. See Am. Compl. at 3. Brown insists that the one-year statute of limitations should be tolled in his case because his former attorney "effectively prevented [him] from asserting his rights" by advising him that the case "had nothing to do with civil rights." Aug. 12 Opp. at 7. Unfortunately for Brown, however, the Human Rights Act "contains no express provisions for tolling [its] one-year statute of limitations," nor has the District of Columbia adopted a general equitable "saving" statute to toll statutes of limitations in cases of reasonable mistake. See East v. Graphic Arts Industry Joint Pension Trust, 718 A.2d 153, 156 (D.C. 1998).

It is true that the D.C. Court of Appeals has recognized "two limited exceptions" to the District's "generally strict application of statutes of limitations" – the "lulling doctrine" and the "discovery rule." Id. But only the discovery rule, also reflected in the Human Rights Act itself, is even arguably applicable here, and that rule applies only "where the fact of an injury is not readily apparent." Id. (citing Farris v. Compton, 652 A.2d 49, 54 (D.C. 1994)). Where, as in Brown's case, "the plaintiff has failed to discover the relevant law even though the existence of an injury is apparent," the statute of limitations continues to run. Id. (citing Kidwell v. District of Columbia, 670 A.2d 349, 353 (D.C. 1996)). Brown has filed a surreply claiming that his former attorney effectively concealed the evidence that he needed to file a complaint with the DCOHR by telling him that he had no basis for a civil rights claim against Whole Foods, see Supp. Mem. at 3, but again, so long as Brown knew the facts of his case against Whole Foods, the discovery rule cannot save him from his misapprehension of the law. Because it is no longer

10

possible for Brown to comply with Title II's notice requirement, amendment will not cure the notice deficiency.

## IV. Conclusion

For the foregoing reasons, the Court will issue a contemporaneous Order that will grant Defendant's Motion to Dismiss. A separate Order consistent with this Opinion will be issued this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: September 4, 2013